FILED LODGED
RECEIVED COPY
OCT 19 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY DEPUTY

Danny H. Cooprider
1703 W. Rovey Ave.
Phoenix, AZ 85015
Telephone: (303) 378-8161
Email: dhcooprider@gmail.com
Plaintiff, *In Propria Persona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Danny H. Cooprider**<br>Plaintiff,<br>v.<br>**Solterra Connections, LLC,**<br>an Arizona limited liability company;<br>and<br>**John Does 1–10,**<br>Defendants. | Case No.: CV26-07635-PHX-MTL<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Count I: 47 C.F.R. § 64.1200(c)(2) (National Do-Not-Call Registry)<br>Count II: 47 C.F.R. § 64.1200(d)(1) (Written Do-Not-Call Policy)<br>Count III: 47 C.F.R. § 64.1200(d)(2) (Do-Not-Call Training)<br>Count IV: 47 C.F.R. § 64.1200(d)(4) (Identification of Seller)<br>Count V: 47 C.F.R. § 64.1601(e) (Caller Identification)<br>Count VI: A.R.S. §§ 44-1282, 44-1522 (Arizona Do-Not-Call; Consumer Fraud Act)<br>Count VII: A.R.S. §§ 44-1272 to 44-1278 (Telephone Solicitations Article)<br>Count VIII: Intrusion Upon Seclusion |

NOW COMES the Plaintiff, DANNY H. COOPRIDER, appearing in propria persona, and for his complaint against Defendants SOLTERRA CONNECTIONS, LLC ("Solterra") and JOHN DOES 1–10 (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1. Plaintiff has the right to be let alone. He has the right to decide who may reach him on his own telephone, and he has the right to be the one who decides whether a commercial transaction begins. Justice Brandeis called that right "the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), *quoted in Stanley v. Georgia*, 394 U.S. 557, 564 (1969). As against private persons, the Supreme Court has explained, "the protection of a person's general right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States." *Katz v. United States*, 389 U.S. 347, 350 (1967). Arizona's Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law," Ariz. Const. art. 2, § 8, a guarantee that restrains government, *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 278, 947 P.2d 846 (App. 1997). Against private persons, Arizona protects the same interest through the common-law tort of intrusion upon seclusion. *Id.* at 279 (applying Restatement (Second) of Torts § 652B); *see Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 338, 783 P.2d 781 (1989).

2. Against a private seller, the right belongs to the person who is approached, not the person who approaches. "[T]he right of every person 'to be let alone' must be placed in the scales with the right of others to communicate"; a seller's right to reach a person "must stop at the mailbox of an unreceptive addressee"; and "no one has a right to press

even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 736–38 (1970). Whether a solicitor may call at a home has "been deemed to depend upon the will of the individual master of each household, and not upon the determination of the community." *Martin v. City of Struthers*, 319 U.S. 141, 141 (1943).

3. Congress built the National Do-Not-Call Registry on that principle. The Registry protects "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), and the statute defines a "telephone solicitation" by the absence of the recipient's "prior express invitation or permission," 47 U.S.C. § 227(a)(4)(A). The Ninth Circuit has held that the Act "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent," and that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). The Registry "means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

4. Plaintiff exercised that right in the way the law provides. He personally registered his cellular telephone number, (303) 378-8161 (the "Cellular Line"), on the National Do-Not-Call Registry on February 6, 2007, and the registration has remained in force ever since. He never invited any Defendant to call, never did business with any Defendant, and never gave any Defendant his number.

5. Between August 4, 2026 and August 31, 2026, Defendants called the Cellular Line anyway, seven times in twenty-seven days, to sell residential solar installations. Defendants took for themselves a decision that the law reserves to Plaintiff: whether Defendants would be heard on Plaintiff's telephone at all.

6. Defendants did not take that decision quietly. They placed the seven calls from seven different telephone numbers, none of which carried a name, so that the person being called could not see who was calling. Their callers introduced themselves under a succession of names, "SGIP," "SGIT," "the Energy Builders Plan Center," "DSP," "EST," "ESP," and "Energy Savings Program," none of which is Solterra's name. They told Plaintiff the program was "government-backed," "government-sponsored," and "a program with the State of Arizona." They told him a letter had come to his home with his electricity bill. They recited his name and his street address to him. Asked where the company was located, whether it had a website, and for whom the visiting "engineer" worked, they changed the subject. Asked three times on August 22, 2026 for the company's name, the caller answered: "Its name is Solterra Connections." Solterra Connections, LLC is a private company that had existed for seven weeks when the first call was placed. Plaintiff's written demand that the calls stop was mailed to Solterra's statutory agent on August 27, 2026, and two more calls followed. A second written notice was delivered to the same statutory agent by certified mail on September 24, 2026. Solterra has answered neither. Every count that follows is a remedy Congress, the Arizona Legislature, or the common law provides for that taking.

7. This action arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R. §§ 64.1200 and 64.1601; the Arizona Consumer Fraud Act ("CFA"), A.R.S. §§ 44-1522 and 44-1533, through the unlawful practices declared by A.R.S. §§ 44-1282(B) and 44-1278; and the Arizona common law of intrusion upon seclusion. Plaintiff seeks statutory damages, treble damages, actual and punitive damages, injunctive relief, and costs.

## PARTIES

8. Plaintiff Danny H. Cooprider is a natural person and a resident of Maricopa County, Arizona, residing at 1703 W. Rovey Ave., Phoenix, Arizona 85015. Plaintiff is the subscriber to, customary user of, and actual recipient of the calls placed to the Cellular Line, a cellular telephone subscription that Plaintiff uses primarily for personal, family, and household communications.

9. Defendant Solterra Connections, LLC is a limited liability company organized under the laws of the State of Arizona, Arizona Corporation Commission Business ID 25080913. Its Articles of Organization were filed and became effective on June 15, 2026. Solterra is manager-managed; its manager of record is Solterra Ventures, LLC. Solterra's statutory agent is Northwest Registered Agent LLC, 4539 N. 22nd St., Ste. N, Phoenix, Arizona 85016, which is also the principal address Solterra gave the Corporation Commission. Solterra sells, or arranges the sale of, residential solar installations to Arizona homeowners, and solicits those sales by telephone.

10. Defendants John Does 1–10 are the persons and entities, whose true names are unknown to Plaintiff, that placed the calls alleged herein on Solterra's behalf, or that supplied the telephone numbers, dialing platform, calling personnel, or consumer data used to place them.

11. The John Doe Defendants' identities are known to Defendants and to the carriers through which the seven calling numbers were provisioned, and cannot be learned by Plaintiff without discovery. Plaintiff has done what can be done without it. He asked the callers for the company's name, location, telephone number, and website, paragraphs 28, 31, 35, and 38; he ran caller-name and carrier lookups on all seven numbers, which returned no subscriber name and identified the carriers of record, paragraphs 45 and 46; and he requested Solterra's records in writing twice, paragraphs 48 and 50. Plaintiff designates the unknown Defendants by fictitious names, will move for leave to conduct limited early discovery from the carriers of record identified in paragraph 45, and from any entity those carriers identify, for the purpose of learning their names, and will seek leave to amend this Complaint when their true names are discovered. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Each John Doe Defendant is alleged to be liable for the calls it placed or caused to be placed, as alleged in paragraph 43, and not for any call in which it did not participate.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, because Plaintiff's claims under the TCPA, 47 U.S.C. § 227, arise under the laws of the United

States, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), and under 28 U.S.C. § 1367, because Plaintiff's claims under the Arizona Consumer Fraud Act and the Arizona common law arise from the same case or controversy as the federal claims.

13. This Court has personal jurisdiction over Solterra because Solterra is an Arizona limited liability company with its principal address and statutory agent in Maricopa County, Arizona, and over all Defendants because each committed or caused the unlawful acts alleged herein by directing telephone solicitations into Arizona to an Arizona resident, for the purpose of selling solar installations on Arizona homes.

14. Venue is proper under 28 U.S.C. § 1391(b)(2), because the telephone calls complained of herein were received by Plaintiff in this judicial district, at Plaintiff's residence in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Cellular Telephone Number and Do-Not-Call Registration

15. Plaintiff's cellular telephone number is (303) 378-8161, the Cellular Line. The Cellular Line is a residential telephone subscription.

16. Plaintiff Danny H. Cooprider personally registered the Cellular Line on the National Do-Not-Call Registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. Part 310 on February 6, 2007. The Cellular Line has been so listed continuously at all times since, a period of more than nineteen years as of the first call alleged herein. A true copy of the Registry's verification of that registration is attached as Exhibit A.

17. Plaintiff uses the Cellular Line primarily for personal, family, and household communications. The Federal Communications Commission has declared that wireless subscribers who ask to be put on the National Do-Not-Call Registry are presumed to be "residential subscribers." *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, ¶ 36 (2003). Defendants' calls were directed to Plaintiff at his home and as a homeowner: on each of Calls 1, 2, 3, 5, and 6, the caller recited Plaintiff's home address at 1703 W. Rovey Ave., or the street on which it sits, and sought a visit, consultation, or inspection at that home.

18. Plaintiff is the subscriber and customary user of the Cellular Line, is the actual recipient of the telephone calls at issue, and suffered the invasion of privacy alleged herein.

**B. Absence of Consent and Business Relationship**

19. At no time has Plaintiff provided the Cellular Line to Solterra, to any John Doe Defendant, or to any entity or person acting on their behalf.

20. At no time has Plaintiff requested any goods, services, or information from any Defendant. Plaintiff has never inquired about solar panels, energy consultations, or energy-savings programs from any Defendant or from anyone using any of the names the callers gave.

21. At no time has Plaintiff given any Defendant prior express invitation or permission, written or oral, to call the Cellular Line.

22. At no time has Plaintiff had an "established business relationship," as that term is used in the TCPA, with any Defendant. Solterra did not exist until June 15, 2026, seven weeks before the first call.

**C. The Calls**

**Call 1 — August 4, 2026**

23. On Tuesday, August 4, 2026, at approximately 2:12 p.m. Mountain Standard Time, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 900-5975; no caller name was displayed. The call lasted approximately three minutes and forty-eight seconds and was recorded.

24. A live caller asked for "Danny" and identified himself as "Alex with the SGIP," which he said "stands for self-generating incentive program." He described a program for people paying "above $150" on their electrical bill, under which "engineers" would visit the home. He stated: "the address that we have on file is 1703 West Rovey Avenue," and said the neighborhood was "being flagged with high energy consumption."

25. When Plaintiff asked where the caller had obtained his telephone number, the caller answered: "The SGIP, the program in itself, has been backed up by the government and we're just pretty much reaching out to everyone in these neighborhoods." Asked again, he said: "This is on a very much general database from the government on the people who are actually living in this area, sir." He added: "We already sent a letter to this address." The caller did not state the name of any company, the address from which he was calling, or the address of any seller.

**Call 2 — August 15, 2026**

26. On Saturday, August 15, 2026, at approximately 12:18 p.m. Mountain Standard Time, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 813-8057; no caller name was displayed. The call lasted approximately three minutes and was recorded.

27. A live caller said: "Hi, Danny. This is Ella with SGIT. And I'm calling about the letter that was sent along with the electricity bill," which she said "was sent to 1703 West Rovey Avenue." Asked whom she was with, she said, "I'm calling on behalf of SGIP," which she called "the Self-Generation Incentive Program" and "a government-backed program." She asked whether Plaintiff was "paying more than $150 every month" for electricity and said that "our engineers will be available at your neighborhood for the next couple of weeks" to conduct "a free energy consultation."

28. Plaintiff asked twice where the company was located. The caller answered: "Our engineer will discuss everything and will answer all of the questions during the quick visit." Plaintiff asked whether the number she was calling from was the company's telephone number. She answered: "Yes. It is, yes."

**Call 3 — August 22, 2026**

29. On Saturday, August 22, 2026, at approximately 10:31 a.m. Mountain Standard Time, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 793-6667; no caller name was displayed. The call lasted approximately four minutes and fifty-one seconds and was recorded.

30. A live caller asked for Plaintiff by his full name and said: "We're calling with the Energy Builders Plan Center, and we're calling the letter that we sent a few days ago, along with your electricity bill." Asked for the company's name, he said, "Energy Builders Plan. This is a program with the State of Arizona for helping those who pay around 150 on electricity." Asked where he had obtained Plaintiff's number, he answered: "Public records, sir." He said that Plaintiff's street "was flagged with high electricity consumption" and that "our engineers will be available in the neighborhood for the next two weeks."

31. Plaintiff asked whether the engineers' truck carried the Energy Builders Plan name. The caller answered: "Yeah, well, the Energy Builders Plan is the state government that's backing up the company. Its name is Solterra Connections." Asked to repeat it, he said: "Connections, and we're working along with the state government to help some families in the area to see if they would be interested in having solar panels to reduce the cost of electricity," and then: "That's the name of the company, sir." Asked whether the company was in Arizona, he said, "we're covering right now the whole state." He said that "[t]he government will help you finance" the solar panels, that an "inspection" of Plaintiff's roof was needed, and that eligibility required a "credit score over 650."

**Call 4 — August 23, 2026**

32. On August 23, 2026, at approximately 7:30 p.m. Mountain Standard Time, a Sunday evening, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 813-8372; no caller name was displayed. The call connected and lasted

approximately fifteen seconds. The displayed number falls in the same (928) 813 block as the numbers displayed on Calls 2, 5, and 7.

**Call 5 — August 25, 2026**

33. On Tuesday, August 25, 2026, at approximately 7:25 p.m. Mountain Standard Time, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 813-8688; no caller name was displayed. The call lasted approximately three minutes and forty-eight seconds and was recorded.

34. A live caller said: "Hey, Danny," and then: "This is Ella Ware, DSP. And I'm calling about the letter that was sent along with your electricity bill," which she said "was sent to 1703 West Rovey Avenue." Asked who she was, she said: "This is Ella with EST. It's an energy savings program. It's a government-backed program." Asked again, she called it a "[g]overnment-sponsored program." Asked directly, "What company are you with?" she answered: "Well, I'm working on behalf of ESP." She asked whether Plaintiff was the owner of 1703 West Rovey Avenue, said that "your area got flagged for high consumption," and asked whether he was "paying $150 every month" for electricity.

35. Plaintiff asked whether the company had a telephone number or a website. The caller answered: "Well, our engineers will do everything during the visit." Plaintiff asked whom the engineer worked for, and whether it was the government. The caller answered: "Well, are you available for next week?"

**Call 6 — August 28, 2026**

36. On Friday, August 28, 2026, at approximately 2:00 p.m. Mountain Standard Time, the day after Plaintiff mailed his written demand to Solterra's statutory agent, Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 900-6293; no caller name was displayed. The call lasted approximately three minutes and sixteen seconds and was recorded.

37. A live caller said: "Hi, this is Ella. Am I speaking with Danny?" and then: "This is Ella with ESP, and I'm calling about the letter that was sent along with your electricity bill." Asked whom she was with, she said: "I'm calling on behalf of Energy Savings Program. It's a government-backed program designed to help homeowners in your area save some money on electricity." She stated that she was speaking with the owner of 1703 West Rovey Avenue and asked whether he was "paying $150 every month" on his electricity bill.

38. Plaintiff asked: "Is this a company? Do you have a company name?" The caller answered: "Well, our engineer will call you before the appointment and will answer all of the questions during the visit." Plaintiff asked whether the company had a website. The caller answered: "Well, our engineer will discuss everything and will answer all of the questions," and then: "Let's go ahead and schedule the appointment."

**Call 7 — August 31, 2026**

39. On Monday, August 31, 2026, at approximately 1:50 p.m. Mountain Standard Time, four days after Plaintiff mailed his written demand to Solterra's statutory agent,

Defendants initiated a telephone call to the Cellular Line. The caller ID displayed (928) 813-8712; no caller name was displayed. The call lasted approximately twenty seconds and was recorded. A live caller asked, "Am I speaking with Danny?", asking for Plaintiff by his first name as the callers had on Calls 1, 2, 5, and 6.

**D. One Campaign, Placed by or on Behalf of Solterra**

40. The seven calls were one campaign. Each was placed to the same line, within a single twenty-seven-day period, from an Arizona (928) number. The recorded calls ran one script: a purported government energy program; a letter said to have been sent to Plaintiff's home; Plaintiff's own name and street recited to him; a question whether he pays $150 a month for electricity; a statement that his area had been "flagged" for high consumption; and a free visit from "engineers" who would be in the neighborhood for the next two weeks. A caller using the name "Ella" placed Calls 2, 5, and 6.

41. The caller on Call 3 identified the company behind that script by name: "Its name is Solterra Connections," and "That's the name of the company, sir." The product the script sells, residential solar panels with financing, is the business Solterra conducts.

42. Each call was initiated for the purpose of encouraging the purchase of goods and services, namely residential solar panels, their installation, and their financing, and each was therefore a "telephone solicitation" within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15), a call "for telemarketing purposes" within the meaning of 47 C.F.R. § 64.1200(d) and (f)(13), and a "telephone solicitation" within the meaning of A.R.S. § 44-1271.

43. Solterra is a "seller," and the persons who placed the calls are "solicitors," within the meaning of A.R.S. § 44-1271. On information and belief, the John Doe Defendants placed the calls as Solterra's agents, with Solterra's actual authority, for Solterra's benefit, and using a script and consumer data that Solterra supplied or approved: the callers sold Solterra's product, named Solterra as the company, and sought appointments for the company's representatives. Alternatively, the callers acted with Solterra's apparent authority. Alternatively, Solterra ratified the calls: Plaintiff's written notice identifying calls placed in its name was mailed to Solterra's statutory agent on August 27, 2026, a second written notice identifying all seven calls was delivered there on September 24, 2026, and Solterra has disavowed none of the calls and answered neither notice. A seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer," and "may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, ¶¶ 24, 28 (2013). Under 47 U.S.C. § 227(c)(5), liability attaches to calls made "by or on behalf of" the same entity, and A.R.S. §§ 44-1278(B) and 44-1282(A) reach a seller, a solicitor, and anyone acting on their behalf. Each John Doe Defendant that initiated a call is liable as its initiator. Solterra is liable for each call whether it dialed the call itself or caused another to dial it.

44. Before the first call, Defendants had acquired consumer data concerning Plaintiff: his name, his street address, and the Cellular Line, keyed together. The caller on Call 1

described it as "the address that we have on file." Defendants used that data to place each of the seven calls.

**E. Caller Identification and CNAM Data**

45. The seven calls displayed seven different telephone numbers. None displayed a name:

| Call | Date | Number Displayed | Carrier of Record | Name Returned | Line Type |
|---|---|---|---|---|---|
| 1 | 08/04/2026 | (928) 900-5975 | Bandwidth (Sinch) | none | mobile |
| 2 | 08/15/2026 | (928) 813-8057 | Bandwidth (Sinch) | none | non-fixed VoIP |
| 3 | 08/22/2026 | (928) 793-6667 | Bandwidth.com (Infobip) | none | non-fixed VoIP |
| 4 | 08/23/2026 | (928) 813-8372 | Bandwidth (Sinch) | none | non-fixed VoIP |
| 5 | 08/25/2026 | (928) 813-8688 | Bandwidth (Sinch) | none | non-fixed VoIP |
| 6 | 08/28/2026 | (928) 900-6293 | Pinger / Bandwidth.com (Sinch) | none | non-fixed VoIP |
| 7 | 08/31/2026 | (928) 813-8712 | Bandwidth (Sinch) | none | non-fixed VoIP |

46. Plaintiff conducted caller-name ("CNAM") and carrier lookups on each number through the Twilio Lookup service. Every number returned no subscriber name and a caller type of "undetermined," and every number was provisioned through the same family of wholesale internet-telephony carriers. No Defendant registered its name to any of the seven numbers. A person receiving any of the seven calls could not learn from the display who was calling.

47. The caller on Call 2 confirmed that the number displayed was the company's own. Asked whether the calling number was the company's telephone number, she answered: "Yes. It is, yes."

**F. Written Notice and Non-Response**

48. On August 27, 2026, Plaintiff sent a written demand and preservation notice to Solterra by first-class mail, properly addressed and with postage prepaid, to its statutory agent, Northwest Registered Agent LLC, at 4539 N. 22nd St., Ste. N, Phoenix, Arizona 85016. The letter identified the calls then known by date, time, and originating number; demanded that the Cellular Line be placed on Solterra's internal do-not-call list and suppressed from every calling list used by Solterra and its vendors; and requested, by September 8, 2026, the written do-not-call policy, personnel training records, do-not-call request procedures, caller-identification procedures, internal do-not-call list, and Registry-scrub records that 47 C.F.R. § 64.1200 requires a telemarketer to maintain, together with Solterra's registration under A.R.S. § 44-1272 and a copy of the letter its callers said had been sent to Plaintiff's home.

49. Call 6 was placed on August 28, 2026, and Call 7 on August 31, 2026. They were the first and second calls following Plaintiff's written demand.

50. On September 22, 2026, Plaintiff sent Solterra a second written notice by United States Postal Service Certified Mail, addressed to its statutory agent at the same address. The notice identified all seven calls by date, time, and originating number; requested again, as to all seven calls, Solterra's written do-not-call policy, training records, do-not-

call procedures, evidence of Registry access within thirty-one days before each call, the caller-identification information and the subscriber, carrier, and dialing platform for each calling number, its registration under A.R.S. § 44-1272 or the facts supporting any exemption it claims under A.R.S. § 44-1273, the source of Plaintiff's name, number, and address in its calling list, the identity of every person that placed any of the calls, and a copy of the letter its callers described; and enclosed a draft of the complaint Plaintiff intended to file. The Postal Service's electronic delivery confirmation records delivery of the notice at the statutory agent's address at 9:45 a.m. on September 24, 2026.

51. Solterra did not respond to the first notice by September 8, 2026, or by the September 10, 2026 date that notice set for a substantive response. Solterra did not respond to the second notice within the seven days it allowed, and has responded to neither notice as of the filing of this Complaint. Solterra has produced no written do-not-call policy, no training records, no internal do-not-call list, no Registry-access or scrub records, no registration statement or claim of exemption, no account of the source of Plaintiff's information, and no copy of any letter.

**G. Willfulness**

52. Defendants' violations were willful and knowing. Defendants knew they were placing telemarketing calls, knew the person they were calling had not asked to hear from them, and conducted the calls in a manner designed to keep that person from identifying them or stopping them.

53. The calls did not stop with Plaintiff's written demand. The demand was mailed to Solterra's statutory agent on August 27, 2026. Call 6 followed on August 28 and Call 7 on August 31. A second written notice, identifying all seven calls and enclosing a draft of this Complaint, was delivered to the same statutory agent on September 24, 2026. Solterra has disavowed none of the calls, has answered neither notice, and has not produced the do-not-call policy that federal law requires every telemarketer to have "available upon demand." 47 C.F.R. § 64.1200(d)(1). A seller that had such a policy would have produced it.

54. Defendants configured the calls so that the person called could not identify the caller. They used seven numbers for seven calls, registered a name to none of them, and rotated among them so that blocking one number would not stop the next call. On the recorded calls their callers opened under names that were not Solterra's, and deflected each of Plaintiff's questions about the company's name, its location, its telephone number, its website, and the employer of the "engineer" who was to come to his home. An operation that intends to honor a do-not-call request tells the consumer whom to ask. This one did not.

55. Defendants' callers made statements of fact to induce Plaintiff to admit a stranger to his home, and the statements were untrue. Solterra is a private limited liability company organized on June 15, 2026. It is not a government program, and, on information and belief, no agency of the United States or of the State of Arizona sponsors, backs, or finances its sales. No letter from Solterra, or from anyone using any of the names its

callers gave, came to Plaintiff's home with his electricity bill; Plaintiff's electric utility is Salt River Project, which bills him electronically. These were not one caller's improvisations. Different callers made the same statements on different days from the same script.

56. Defendants knew of, or recklessly disregarded, the Cellular Line's registration on the National Do-Not-Call Registry. The Registry is available to every seller and telemarketer for the purpose of complying with the law. The federal regulations extend a safe harbor only to a seller or telemarketer that, as part of its routine business practice, uses a process to prevent solicitations to registered numbers, employing a version of the Registry obtained no more than thirty-one days before the call, and maintains records documenting that process. 47 C.F.R. § 64.1200(c)(2)(i)(D); 16 C.F.R. § 310.4(b)(3)(iv). Defendants held Plaintiff's name, address, and number in a file before the first call, and their callers described the source of that number as "[p]ublic records" and "a very much general database from the government." The Registry on which the number had been entered for more than nineteen years is itself a government database. Either Defendants checked the Cellular Line against the Registry and called it anyway, which is knowing, or they assembled a calling file from government and public records and declined to check it against the one government record that would have stopped the calls, which is reckless. Asked twice in writing for their Registry-access records, Defendants have produced none.

57. Defendants operate a professional telemarketing operation. Their callers described "reaching out to everyone in these neighborhoods" and "covering right now the whole

state," worked from a common script and a common data file, and drew on a pool of telephone numbers.

58. Each violation alleged in Counts I through V warrants the full $500 that 47 U.S.C. § 227(c)(5)(B) permits, "up to $500 in damages for each such violation," and an express finding that Defendants willfully or knowingly violated the regulations prescribed under 47 U.S.C. § 227(c), warranting an increase of each award to three times that amount. The Cellular Line had been registered for more than nineteen years. The calls came seven times in twenty-seven days, from seven numbers that carried no name. The callers misrepresented a government sponsorship and a letter that did not exist, and deflected every question that would have let Plaintiff identify the seller or direct a do-not-call request to it. Two calls followed Plaintiff's written demand. Solterra has answered neither of two written notices, the second delivered by certified mail with a draft of this Complaint enclosed. Nothing about these calls was inadvertent.

**H. Injuries**

59. The injury Defendants inflicted is the invasion of a right, and the harms that follow are the forms that invasion took. Plaintiff had decided, in the one way the law provides, that sellers were not to reach him on the Cellular Line. He personally registered the line on the National Do-Not-Call Registry on February 6, 2007. He had registered his only other personal line on December 6, 2005. He has added no line since, and he sought no court's help enforcing either registration for the better part of two decades. Registration was Plaintiff's declaration, and the law's mechanism, for being let alone.

60. Each of Defendants' seven calls overrode that declaration. Each took Plaintiff's attention without asking for it, on a line he keeps for himself and his household. Each interrupted whatever Plaintiff was doing, two of them on Saturdays, one on a Sunday evening, and another on a weeknight, and each required him to answer, to screen, to identify the caller, and to determine whether the call was lawful, all in service of a transaction he had said in advance he did not want. The time consumed, the attention diverted, the solitude broken, and the household interrupted are not separate injuries; each is what it looked like when Plaintiff's right to decide who may reach him was taken from him, seven times in twenty-seven days.

61. The tangible components of that injury can be counted and are itemized in Count VI below. The count is the smallest part of the injury, not its measure. Nor did Defendants' calls arrive alone. From August 4 through August 31, 2026, while Defendants were calling, the Cellular Line also received at least nine other unsolicited commercial telephone calls, from at least eight other numbers, and at least four unsolicited commercial text messages, every one to a number Plaintiff had registered on the National Do-Not-Call Registry more than nineteen years earlier. Plaintiff does not seek to hold Defendants liable for calls that others placed. Each of Defendants' seven calls, however, landed on a line already absorbing that volume and added to it, and the intrusion of each is measured in that setting, not as though it were the only unwanted call Plaintiff received.

62. Each call also caused Plaintiff the concrete harms Congress identified in enacting the TCPA: invasion of privacy, intrusion upon seclusion, disruption of his personal use of the Cellular Line, consumption of cellular airtime, and the expenditure of time to investigate the identity of callers who would not give it. Those harms are sufficiently concrete to establish Article III standing. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

63. Plaintiff's registration was his effort to avoid exactly these calls, and the harms enumerated above are the record of that effort being defeated. The TCPA affords relief to those persons who, "despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

64. These harms are the very harms Congress and the Arizona Legislature acted to prevent. In enacting the TCPA, Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Pub. L. No. 102-243, § 2(5), 105 Stat. 2394, 2394 (1991).

65. The Arizona Legislature likewise determined that outbound telephone solicitation to a number on the National Do-Not-Call Registry is an unlawful practice, A.R.S. § 44-1282(B); that an unsolicited telephone sales call to a mobile telephone is an unlawful practice, A.R.S. § 44-1278(B)(3); and, through the Consumer Fraud Act, declared deceptive and unfair practices in connection with the sale or advertisement of merchandise to be unlawful, A.R.S. § 44-1522, enforceable by private consumers who

are damaged thereby, *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575–76, 521 P.2d 1119, 1121–22 (1974).

66. The protective scheme Congress and the Arizona Legislature constructed does more than shield called consumers. It defines the lawful conditions under which any business may use the telephone to reach Arizona residents, and in doing so it sets a floor of compliance costs that every legitimate operator must bear. The Arizona Legislature requires telephone sellers to register annually with the Secretary of State, A.R.S. § 44-1272, to post a $100,000 surety bond for the protection of consumers, A.R.S. § 44-1274, to make the disclosures required at the outset of every call and to identify themselves accurately on caller identification, A.R.S. § 44-1276, and to refrain from soliciting telephone numbers entered in the national do-not-call registry, A.R.S. § 44-1282. Each of these requirements imposes real cost: registration fees, bond premiums, training, recordkeeping, and the operational discipline of building a customer pipeline through lawful means rather than through indiscriminate cold-calling. Honest Arizona businesses bear those costs because the Legislature determined that they should.

67. Defendants did not. By ignoring Plaintiff's registration of more than nineteen years, by concealing their identity behind seven rotating numbers that carried no name, by beginning every solicitation without the disclosures A.R.S. § 44-1276(A) requires, by failing to produce on demand the internal do-not-call policy that 47 C.F.R. § 64.1200(d) requires of every telemarketer, and, on information and belief, by operating without A.R.S. § 44-1272 registration and without the A.R.S. § 44-1274 bond, Defendants evaded

the costs that lawful competitors absorb as the price of operating in this market. Every solicitation Defendants placed in violation of these statutes was a solicitation a compliant competitor was not lawfully permitted to place, and a prospective customer that compliant competitor was not given the opportunity to earn. The Legislature made it unlawful for a seller to engage in telephone solicitation without registering, and classified violation of the registration requirement as a class 5 felony, A.R.S. § 44-1277, reflecting its assessment that the conduct strikes not only at the called consumer but at the integrity of the telephone marketplace itself. The harm here is therefore not Plaintiff's alone: it is borne equally by the Arizona solar installers and other businesses, many of them small, family-operated, and just establishing a foothold, that compete in this market under the rules and watch operators willing to ignore those rules gain ground that the law was intended to deny them.

68. The harm is broader still. The Supreme Court has recognized that, while "Americans passionately disagree about many things," they are "largely united in their disdain for robocalls," and that "[t]he Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020) (plurality opinion). Every unlawful telemarketing call contributes to a cumulative social cost that the *Barr* plurality and the enacting Congress both recognized: a population conditioned to distrust the telephone as a medium of legitimate communication, and a private enforcement scheme that depends on individual citizens being willing to bear the cost of asserting their

statutory rights. The Arizona Legislature reached the same conclusion when it created the § 44-1533(B) private right of action, recognizing that the volume of violations exceeds what public enforcement alone can address. A caller who borrows the government's name to get through the door spends that public trust twice.

69. Defendants' conduct is the pattern both legislatures set out to end. They solicited a number registered for more than nineteen years, seven times in twenty-seven days, from seven numbers that carried no name, under names that were not their own, on the strength of a government sponsorship that did not exist, and they placed the sixth and seventh calls after Plaintiff's written demand had been mailed to their statutory agent. This is the predatory telemarketing that both the federal and Arizona legislatures sought to eradicate.

**I. Basis for Injunctive Relief**

70. Plaintiff has a reasonable apprehension of future violations, and there is a likelihood that Defendants' unlawful conduct will recur, drawn from Defendants' own operating posture: Defendants hold Plaintiff's name, address, and the Cellular Line in a calling file and have called it seven times; they place calls from a rotating pool of numbers that carry no name, so that Plaintiff cannot block them; their callers will not state the seller's name, location, telephone number, or website, so that Plaintiff cannot direct a do-not-call request to anyone; they have produced no written do-not-call policy, training record, internal list, or Registry-scrub record in response to two written requests for them, the second delivered by certified mail; they placed Calls 6 and 7 after the first of those requests was mailed; and their callers describe a campaign "covering right now the whole

state." A backward-looking, per-violation damages award compensates the past calls but does not restrain Defendants' continuing use of the same calling file, the same pool of numbers, and the same absence of procedures that produced them; only prospective injunctive relief addresses that continuing exposure. Plaintiff accordingly seeks an injunction requiring Defendants to suppress the Cellular Line from all of Defendants' telemarketing campaigns, calling files, and lead sources, to direct their vendors to do the same, and to implement and maintain written do-not-call policies and list-scrubbing procedures compliant with 47 C.F.R. § 64.1200(d).

## COUNT I — VIOLATION OF 47 C.F.R. § 64.1200(c)(2): NATIONAL DO-NOT-CALL REGISTRY, ACTIONABLE UNDER 47 U.S.C. § 227(c)(5) (ALL DEFENDANTS)

71. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72. Each of Calls 1 through 7 violated 47 C.F.R. § 64.1200(c)(2), in that Defendants initiated telephone solicitations to a residential telephone subscriber who had registered his telephone number on the national do-not-call registry, without prior express invitation or permission and without an established business relationship. Plaintiff received more than one such call within a twelve-month period by or on behalf of the same entity.

73. The aforesaid violations were willful and/or knowing, for the reasons alleged in paragraphs 52 through 58.

## COUNT II — VIOLATION OF 47 C.F.R. § 64.1200(d)(1): NO WRITTEN DO-NOT-CALL POLICY, ACTIONABLE UNDER 47 U.S.C. § 227(c)(5) (ALL DEFENDANTS)

74. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

75. 47 C.F.R. § 64.1200(d) provides that no person or entity shall initiate "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." Those procedures must include a "written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1).

76. Each of Calls 1 through 7 was a call for telemarketing purposes to a residential telephone subscriber, initiated by or on behalf of Defendants, at a time when Defendants had no written policy, available upon demand, for maintaining a do-not-call list. Plaintiff demanded that policy in writing in the notice mailed on August 27, 2026 and again in the notice delivered on September 24, 2026. None has been produced. Plaintiff received more than one such call within a twelve-month period by or on behalf of the same entity.

77. The aforesaid violations were willful and/or knowing, for the reasons alleged in paragraphs 52 through 58.

## COUNT III — VIOLATION OF 47 C.F.R. § 64.1200(d)(2): NO DO-NOT-CALL TRAINING, ACTIONABLE UNDER 47 U.S.C. § 227(c)(5) (ALL DEFENDANTS)

78. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

79. 47 C.F.R. § 64.1200(d)(2) requires that personnel "engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."

80. Each of Calls 1 through 7 was a call for telemarketing purposes to a residential telephone subscriber, initiated by or on behalf of Defendants, by personnel who, on information and belief, had not been informed and trained in the existence and use of a do-not-call list. The callers were unable or unwilling to state the seller's name, address, or telephone number when asked; no caller offered any means by which a do-not-call request could be made; and Defendants produced no training record in response to either of Plaintiff's written requests for one. Plaintiff received more than one such call within a twelve-month period by or on behalf of the same entity.

81. The aforesaid violations were willful and/or knowing, for the reasons alleged in paragraphs 52 through 58.

## COUNT IV — VIOLATION OF 47 C.F.R. § 64.1200(d)(4): FAILURE TO IDENTIFY THE SELLER AND HOW TO CONTACT IT, ACTIONABLE UNDER 47 U.S.C. § 227(c)(5) (ALL DEFENDANTS)

82. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

83. 47 C.F.R. § 64.1200(d)(4) requires a person or entity making any call for telemarketing purposes to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

84. On each of Calls 1 through 7, no caller provided a telephone number or address at which Solterra, or any other person or entity on whose behalf the call was made, may be contacted. On each of Calls 1, 2, 5, and 6, the caller gave no name for the entity on whose behalf the call was made other than "SGIP," "SGIT," "DSP," "EST," "ESP," or "Energy Savings Program," none of which is Solterra's name. On Call 3, the caller named Solterra Connections after Plaintiff had asked for the company's name three times, and gave no telephone number or address for it. Each call was a call for telemarketing purposes to a residential telephone subscriber, initiated by or on behalf of Defendants, without the procedures that 47 C.F.R. § 64.1200(d)(4) requires. Plaintiff received more than one such call within a twelve-month period by or on behalf of the same entity.

85. The aforesaid violations were willful and/or knowing, for the reasons alleged in paragraphs 52 through 58.

## COUNT V — VIOLATION OF 47 C.F.R. § 64.1601(e): CALLER IDENTIFICATION INFORMATION, ACTIONABLE UNDER 47 U.S.C. § 227(c)(5) (ALL DEFENDANTS)

86. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

87. 47 C.F.R. § 64.1601(e) requires any person or entity that engages in telemarketing to transmit caller identification information, which "must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." A seller's name and customer-service number may be substituted, but "[t]he telephone number so provided must permit any individual to make a do-not-call request during regular business hours." The regulation was prescribed under 47 U.S.C. § 227(c) and is enforceable through 47 U.S.C. § 227(c)(5).

88. Each of Calls 1 through 7 violated 47 C.F.R. § 64.1601(e), in that Defendants transmitted no name of any telemarketer or seller with any of the seven calls, and rotated among seven numbers to which no Defendant's name was registered. On information and belief, caller-name transmission was available from the carriers through which Defendants obtained the seven numbers, and Defendants elected not to provision it. Plaintiff received more than one such call within a twelve-month period by or on behalf of the same entity.

89. The aforesaid violations were willful and/or knowing, for the reasons alleged in paragraphs 52 through 58.

## COUNT VI — VIOLATION OF A.R.S. § 44-1282(A) (OUTBOUND SOLICITATION TO A DO-NOT-CALL NUMBER), AN UNLAWFUL PRACTICE UNDER A.R.S. § 44-1522, ACTIONABLE UNDER A.R.S. § 44-1533(B) (ALL DEFENDANTS)

90. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

91. A.R.S. § 44-1282(A) provides that a seller or solicitor or anyone acting on behalf of a seller or solicitor "shall not initiate an outbound telephone solicitation call or text message to any telephone number if the telephone number is entered in the national do-not-call registry." A.R.S. § 44-1282(B) declares that "[a] violation of this section is an unlawful practice pursuant to section 44-1522." The Arizona Consumer Fraud Act affords a private right of action to a consumer who has been damaged by a practice declared unlawful under § 44-1522, a right the Arizona Supreme Court inferred from A.R.S. § 44-1533. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575–76, 521 P.2d 1119, 1121–22 (1974). The Federal Trade Commission's Telemarketing Sales Rule likewise treats a call to a number on the Registry as "an abusive telemarketing act or practice." 16 C.F.R. § 310.4(b)(1), (b)(1)(iii)(B).

92. Each of Calls 1 through 7 was an outbound telephone solicitation call initiated to the Cellular Line while the Cellular Line was entered in the National Do-Not-Call Registry, in violation of A.R.S. § 44-1282(A), and each was therefore an unlawful practice under A.R.S. § 44-1522. Defendants acquired property, the consumer data file containing Plaintiff's name, address, and telephone number, and used it as the means of

each unlawful call, intending that Plaintiff answer, remain on the line, confirm his identity and address, and admit Defendants' representative to his home.

93. Plaintiff suffered, and seeks, actual damages of no less than $250 per violation, $1,750 in total. The figure is supported by four external benchmarks: it is half the award of up to $500 per violation that Congress authorized for an identical do-not-call violation, 47 U.S.C. § 227(c)(5)(B); one-quarter of the civil penalty of up to $1,000 per violation that the Arizona Legislature authorized for the identical conduct, A.R.S. § 44-1282(B); at the low end of the per-violation minimums that state legislatures have set for private do-not-call enforcement; and a small fraction of the civil penalty of up to $10,000 per violation available under the Consumer Fraud Act for wilful violations, A.R.S. § 44-1531(A). Plaintiff's tangible costs, the time consumed by seven calls and the time Defendants' concealment forced him to spend identifying the seller behind seven nameless numbers and a succession of false names, through corporate records and carrier and caller-name lookups, are recorded and will be proven at trial. The balance of the figure reflects the non-economic but real injury that Congress and the Arizona Legislature recognized as inherent in an unwanted solicitation, and that Arizona recognizes as the invasion of seclusion. *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 279, 947 P.2d 846 (App. 1997).

94. Defendants' violations were willful and knowing.

95. Defendants' conduct was guided by an evil mind within the meaning of *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). Defendants solicited a number

registered for more than nineteen years, seven times in twenty-seven days, from seven numbers that carried no name; opened each recorded call under a name that was not Solterra's; told Plaintiff that a government stood behind the sale when none did; deflected every question that would have let him identify them or ask them to stop; placed two more calls after his written demand was mailed; and left that demand, and a second notice delivered by certified mail, unanswered. Defendants thereby consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others, the "everyone in these neighborhoods" their callers described, entitling Plaintiff to punitive damages. *See Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342–43, 666 P.2d 83 (Ct. App. 1983) (punitive damages recoverable in private Consumer Fraud Act action).

## COUNT VII — VIOLATIONS OF A.R.S. §§ 44-1278(B)(3), 44-1278(B)(6), 44-1276(A), 44-1276(G), 44-1272, AND 44-1274 (UNSOLICITED, UNDISCLOSED, UNIDENTIFIED, UNREGISTERED, AND UNBONDED TELEPHONE SOLICITATION), UNLAWFUL PRACTICES UNDER A.R.S. § 44-1522, ACTIONABLE UNDER A.R.S. § 44-1533(B) (ALL DEFENDANTS)

96. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

97. A.R.S. § 44-1278(B) declares it "an unlawful practice pursuant to section 44-1522 for any seller or solicitor or anyone acting on their behalf who conducts a telephone

solicitation in this state" to "[i]ntentionally make or cause to be made any unsolicited telephone sales call to any mobile or telephone paging device," § 44-1278(B)(3), or to "[i]nitiate an outbound call except as provided in 47 Code of Federal Regulations, section 64.1200 or 16 Code of Federal Regulations section 310.4," § 44-1278(B)(6). A.R.S. § 44-1276(A) requires that, "[b]efore beginning the solicitation or sales presentation over the telephone," the seller or solicitor disclose the complete street address of the location from which the call is made and of the seller's principal location, "[t]he legal name of the seller on whose behalf the solicitor is making the solicitation," "[t]he solicitor's true legal name," and "[t]hat the purpose of the call is to sell merchandise." A.R.S. § 44-1276(G) provides that "[a] solicitor shall accurately identify themselves on caller identification when making a telephone solicitation call to a residential or mobile telephone in Arizona." A.R.S. § 44-1272 requires a seller to register with the Arizona Secretary of State before soliciting consumers in this State by telephone, and A.R.S. § 44-1274 requires the seller to post a surety bond. A.R.S. § 44-1278(C) provides that "[f]ailure to comply with this article is an unlawful practice pursuant to section 44-1522," actionable by a damaged consumer under § 44-1533(B). *Sellinger*, 110 Ariz. at 575–76.

98. Each of Calls 1 through 7 was an unsolicited telephone sales call intentionally made to the Cellular Line, a mobile telephone, in violation of A.R.S. § 44-1278(B)(3). Each was an outbound call initiated otherwise than as provided in 47 C.F.R. § 64.1200, for the reasons alleged in Counts I through IV, and otherwise than as provided in 16 C.F.R. § 310.4, which forbids a call to a number on the Registry, in violation of A.R.S. § 44-

1278(B)(6). On each of Calls 1, 2, 3, 5, and 6, Defendants began the solicitation without disclosing the address from which the call was made, the address of Solterra's principal location, Solterra's legal name, or that the purpose of the call was to sell merchandise; the callers instead presented the call as a follow-up to a letter about a government program and an offer of a free consultation, and on Calls 1, 2, 3, and 6 no caller gave more than a first name, all in violation of A.R.S. § 44-1276(A). The sales presentation was made on the telephone: the callers described the product, solar panels with "no fees for installation," the government financing said to be available for it, and the credit score required to qualify. On each of Calls 1 through 7, Defendants transmitted a bare number and no name on caller identification, in violation of A.R.S. § 44-1276(G). On information and belief, Solterra is not registered as a telephone seller with the Arizona Secretary of State under A.R.S. § 44-1272 and has posted no bond under A.R.S. § 44-1274; Plaintiff requested Solterra's registration statement, or the basis of any exemption it claims, in writing twice, and Solterra has produced neither. Each violation is an unlawful practice under A.R.S. § 44-1522, independent of the do-not-call violation alleged in Count VI.

99. Plaintiff suffered actual damages in the amount set forth in paragraph 93, proximately caused by Defendants' unlawful conduct. Plaintiff does not seek duplicative recovery of the same actual damages across Counts VI and VII; the violations alleged in this Count independently establish liability and further aggravate the reprehensibility of Defendants' conduct for purposes of punitive damages.

100. Defendants' violations were willful and knowing, and Defendants' conduct was guided by an evil mind within the meaning of *Rawlings*, 151 Ariz. at 162: Defendants chose to sell by telephone in Arizona from numbers that carried no name, through callers who withheld the seller's legal name and address at the outset of every call and when asked, while invoking the authority of a government that had given them none. Defendants thereby consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others, entitling Plaintiff to punitive damages.

## COUNT VIII — INTRUSION UPON SECLUSION (ALL DEFENDANTS)

101. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

102. Arizona recognizes the tort of intrusion upon seclusion as the Restatement states it: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 279, 947 P.2d 846 (App. 1997) (quoting Restatement (Second) of Torts § 652B (1977)); *see Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 338, 783 P.2d 781 (1989).

103. Defendants intentionally intruded upon Plaintiff's solitude and seclusion. They placed, and intended to place, seven commercial telephone calls onto a cellular line that Plaintiff maintains for personal and household use and that Plaintiff had registered on the National Do-Not-Call Registry for more than nineteen years for the express purpose of being let alone. The intrusion was neither incidental nor accidental. Defendants called

Plaintiff by name, from a file that held his name, his home address, and his number, and they placed Calls 6 and 7 after Plaintiff's written demand that the calls stop had been mailed to Solterra's statutory agent.

104. The intrusion would be highly offensive to a reasonable person. What elevates it beyond an ordinary unwanted call is its character and its persistence: seven calls in twenty-seven days, including two on Saturdays and one on a Sunday evening, to a number the recipient had taken affirmative, public, and long-standing steps to shield; seven rotating numbers that carried no name; callers who recited the recipient's home address to him while refusing to give their own; a claimed government sponsorship that did not exist; continued calls after a written demand to stop; and an object, throughout, of placing a stranger inside the recipient's home. It was also an addition to the intrusion pleaded in paragraph 61: each call arrived on a registered line that, during the same weeks, was receiving at least nine other unsolicited commercial calls and at least four unsolicited commercial text messages from others, so that Defendants' calls were not an isolated imposition but a contribution to a sustained one. A reasonable person in Plaintiff's position would find it highly offensive.

105. As a direct and proximate result of Defendants' intrusion, Plaintiff suffered injury to his interest in privacy and seclusion: his right to the solitude of his own home and to decide for himself who may command his attention on a line he keeps for personal use and registered to be free of solicitation. That interest was invaded the moment each call intruded, and the invasion is itself the injury the tort redresses. Plaintiff's injury includes

annoyance, aggravation, mental distress, loss of peace and repose, and disruption of his personal use of the Cellular Line. Plaintiff pleads this Count independently and in the alternative: to the extent the Court determines that non-economic privacy damages are not recoverable under the Consumer Fraud Act, those damages remain recoverable under this common-law claim.

106. Defendants' intrusion was intentional and was guided by an evil mind within the meaning of *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986): Defendants consciously pursued a course of conduct, calling a long-registered number seven times, through concealed numbers and under false names and a false claim of government sponsorship, and twice more after a written demand to stop had been mailed, knowing that it created a substantial risk of significant harm to others. Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter judgment for Plaintiff and against the Defendants, and each of them jointly and severally, as follows:

(a) On Counts I through V, statutory damages under 47 U.S.C. § 227(c)(5)(B), which authorizes an action by a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under 47 U.S.C. § 227(c) "to receive up to $500 in damages for each such violation"; an award in the full amount of $500 for each violation, for the reasons alleged

in paragraph 58; an express finding that Defendants willfully or knowingly violated those regulations; and, on that finding, an increase of each award, in the Court's discretion under 47 U.S.C. § 227(c)(5), "to an amount equal to not more than 3 times the amount available under subparagraph (B)," as follows:

| Count | Regulation Violated | Calls | Violations | Up to $500 per Violation | Trebled (Not More Than 3 Times) |
|---|---|---|---|---|---|
| I | 47 C.F.R. § 64.1200(c)(2) | 1–7 | 7 | $3,500 | $10,500 |
| II | 47 C.F.R. § 64.1200(d)(1) | 1–7 | 7 | $3,500 | $10,500 |
| III | 47 C.F.R. § 64.1200(d)(2) | 1–7 | 7 | $3,500 | $10,500 |
| IV | 47 C.F.R. § 64.1200(d)(4) | 1–7 | 7 | $3,500 | $10,500 |
| V | 47 C.F.R. § 64.1601(e) | 1–7 | 7 | $3,500 | $10,500 |
| TOTAL | | | 35 | $17,500 | $52,500 |

Each of Counts I through V pleads the violation of a distinct regulation prescribed under 47 U.S.C. § 227(c), and each of the seven calls violated all five. Plaintiff contends that distinct regulatory violations arising from the same telephone call are each a separate "violation" within the meaning of 47 U.S.C. § 227(c)(5)(B), and that each is separately actionable and separately compensable. Plaintiff acknowledges that courts have held otherwise, including a court in this District, and that those courts permit one award under 47 U.S.C. § 227(c)(5) for each call, however many regulations the call violated. *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631–32 (6th Cir. 2009); *Noviello v. Adam Wines Consulting, LLC*, No. 3:22-cv-52-BN, Doc. 83 at 8 (N.D. Tex. Apr. 4, 2023); *Crews v. Blackrock*, No. CV-25-00025-PHX-JAT, Doc. 20 at 4 n.2 (D. Ariz. July 28, 2025). Plaintiff does not waive or concede the contention.

The total amount of federal TCPA statutory damages claimed in this action is $52,500.00: thirty-five violations at $500.00 each, $17,500.00 in all, increased threefold because the violations were willful and knowing. Each of Counts I through V independently establishes Defendants' liability for every call, independently supports the finding of willful and knowing conduct, and independently supports the injunctive relief requested below;

(b) On Counts VI and VII, actual damages of not less than $250 per violation, $1,750 in total, under A.R.S. § 44-1533(B);

(c) On Count VIII, damages for intrusion upon seclusion, including non-economic damages for the invasion of Plaintiff's privacy and seclusion, annoyance, aggravation, and mental distress, in an amount to be proven at trial;

(d) Punitive damages on Counts VI, VII, and VIII in an amount to be determined by the trier of fact, consistent with *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Plaintiff respectfully requests that any punitive award reflect the dual deterrent purpose that A.R.S. § 44-1533(B) and the *Rawlings* standard, which reaches a defendant who "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others," 151 Ariz. at 162, contemplate: deterrence of these Defendants from continuing the conduct alleged, and deterrence of other operators, including those weighing whether the costs of lawful telemarketing are worth bearing, from concluding that Arizona's statutes impose merely paper obligations. The Arizona Legislature

classified violation of the telephone seller registration requirement as a class 5 felony, A.R.S. § 44-1277. A plurality of the Supreme Court has recognized the volume of public complaint that unlawful calls generate and the near-universal disdain in which Americans hold them. *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020) (plurality opinion). A punitive award sufficient to deter repetition by these Defendants and to signal to similarly situated operators that the statutes have teeth serves the public interest the Legislature identified, the competitive interest of the Arizona businesses that operate in compliance, and the cumulative public interest in restoring the telephone as a trusted medium of legitimate communication;

(e) A permanent injunction under 47 U.S.C. § 227(c)(5)(A) requiring Defendants to suppress the Cellular Line from all of Defendants' telemarketing campaigns, calling files, and lead sources, to direct their vendors to do the same, and to implement and maintain written do-not-call policies and list-scrubbing procedures compliant with 47 C.F.R. § 64.1200(d);

(f) Plaintiff's taxable costs and disbursements;

(g) Interest at the applicable statutory rate;

(h) To the extent the Court determines that any portion of the foregoing damages would constitute duplicative recovery, Plaintiff seeks damages up to the maximum non-duplicative amount permitted by law, and Plaintiff seeks one satisfaction of any judgment entered against Defendants jointly and severally; and

(i) Such other and further relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Dated this 19th day of October, 2026.

Danny H. Cooprider, *In Propria Persona*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Danny H. Cooprider v. Solterra Connections, LLC, et al.
No. ____________________

# EXHIBIT A

National Do Not Call Registry verification of the registration of telephone number (303) 378-8161

*(1 page)*

*to*

**Complaint and Demand for Jury Trial**

*Filed by Plaintiff Danny H. Cooprider, pro se*

Gmail

**Dan Cooprider <dhcooprider@gmail.com>**

---

## National Do Not Call Registry - Your Registration Is Confirmed

1 message

---

**Verify@donotcall.gov** <Verify@donotcall.gov> Fri, Jul 25, 2025 at 4:53 PM
To: dhcooprider@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8161 on February 06, 2007. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

**************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.